FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 22 2018 ★
BROOKLYN OFFICE

[redacted]

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X

UNITED STATES OF AMERICA

- against -

HUAWEI TECHNOLOGIES CO., LTD.,
[redacted]
HUAWEI DEVICE USA INC.,
SKYCOM TECH CO. LTD. and
WANZHOU MENG,
also known as "Cathy Meng" and
"Sabrina Meng,"

Defendants.

------------------------------X

INDICTMENT

CR 18- 0045

(T. 18, U.S.C., §§ 371, 981(a)(1)(C), 982(a)(1), 982(a)(2), 982(b)(1), 1343, 1344, 1349, 1512(k), 1956(h), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c); T. 50, U.S.C., §§ 1702, 1705(a) and 1705(c))

IRIZARRY, CH.J.

ORENSTEIN, M.J

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment:

### I. The Defendants

1. The defendant HUAWEI TECHNOLOGIES CO., LTD. ("HUAWEI") was a global networking, telecommunications and services company headquartered in Shenzhen, Guangdong, in the People's Republic of China ("PRC"). As of the date of the filing of this Indictment, HUAWEI was the largest telecommunications equipment manufacturer in the world.

2. HUAWEI operated numerous subsidiaries throughout the world, including in the United States. One U.S. subsidiary was the defendant HUAWEI DEVICE USA INC. ("HUAWEI USA"), whose headquarters was in Plano, Texas.

[redacted]

4. The defendant SKYCOM TECH CO. LTD. ("SKYCOM") was a corporation registered in Hong Kong whose primary operations were in Iran. SKYCOM functioned as HUAWEI's Iran-based subsidiary. As of 2007, [redacted] owned SKYCOM through a subsidiary ("Huawei Subsidiary 1"), an entity whose identity is known to the Grand Jury. In or about November 2007, Huawei Subsidiary 1 transferred its shares of SKYCOM to another entity ("Huawei Subsidiary 2"), an entity whose identity is known to the Grand Jury, which was purportedly a third party in the transaction but was actually controlled and owned by HUAWEI.

5. Following this transfer of SKYCOM shares from Huawei Subsidiary 1 to Huawei Subsidiary 2, HUAWEI claimed that SKYCOM was one of HUAWEI's local business partners in Iran, as opposed to one of HUAWEI's subsidiaries or affiliates.

6. The defendant WANZHOU MENG, also known as "Cathy Meng" and "Sabrina Meng," was a citizen of the PRC. MENG served as Chief Financial Officer of HUAWEI. Between approximately February 2008 and April 2009, MENG served on the SKYCOM board of directors. More recently, MENG also served as Deputy Chairwoman of the board of directors for HUAWEI.

II. The Victim Financial Institutions

7. Financial Institution 1, an entity whose identity is known to the Grand Jury, was a multinational banking and financial services holding company operating subsidiaries throughout the world, including in the United States and in Eurozone countries in Europe. Its United States-based subsidiary ("U.S. Subsidiary 1"), an entity whose identity is known to the Grand Jury, was a federally chartered bank, the deposits of which were insured by the Federal Deposit Insurance Company ("FDIC"). Among the services offered by Financial Institution 1 to its clients were U.S.-dollar clearing through U.S. Subsidiary 1 and other financial institutions located in the United States, and Euro clearing through Financial Institution 1 subsidiaries and other financial institutions located in Eurozone countries. Between approximately 2010 and 2014, Financial Institution 1 and U.S. Subsidiary 1 cleared more than $100 million worth of transactions related to SKYCOM through the United States.

8. Financial Institution 2, an entity whose identity is known to the Grand Jury, was a multinational banking and financial services holding company operating subsidiaries throughout the world, including in the United States and in Eurozone countries in Europe. Among the services offered by Financial Institution 2 to its clients were U.S.-dollar clearing through a Financial Institution 2 subsidiary and other financial institutions located in the United States, and Euro clearing through Financial Institution 2 subsidiaries and other financial institutions located in Eurozone countries.

9. Financial Institution 3, an entity whose identity is known to the Grand Jury, was a multinational banking and financial services holding company operating subsidiaries throughout the world, including in the United States and in Eurozone countries

in Europe. Among the services offered by Financial Institution 3 to its clients were U.S.-dollar clearing through Financial Institution 3 subsidiaries and other financial institutions located in the United States, and Euro clearing through Financial Institution 3 subsidiaries and other financial institutions located in Eurozone countries.

10. Financial Institution 4, an entity whose identity is known to the Grand Jury, was a multinational banking and financial services corporation operating subsidiaries throughout the world, including in the United States and in Eurozone countries in Europe. Among the services offered by Financial Institution 4 to its clients were U.S.-dollar clearing through Financial Institution 4 subsidiaries and other financial institutions located in the United States, and Euro clearing through Financial Institution 4 subsidiaries and other financial institutions located in Eurozone countries.

III. The International Emergency Economic Powers Act

11. Through the International Emergency Economic Powers Act ("IEEPA"), the President of the United States was granted authority to address unusual and extraordinary threats to the national security, foreign policy or economy of the United States. 50 U.S.C. § 1701(a). Pursuant to that authority, the President and the Executive Branch have issued orders and regulations governing and prohibiting certain activities and transactions with Iran by U.S. persons and involving items of U.S. origin or exported from the United States.

12. Under IEEPA, it was a crime to willfully violate, attempt to violate, conspire to violate or cause a violation of any license, order, regulation or prohibition issued pursuant to the statute. 50 U.S.C. § 1705(a). Pursuant to Section 1705(c), any person who willfully committed, attempted to commit, conspired to commit, or aided and abetted in the

commission of any unlawful act as described in subsection (a) of the statute was guilty of a crime.

13. In approximately 1995 and again in 1997, the President issued a series of Executive Orders regulating transactions with Iran pursuant to his authorities under IEEPA. See Executive Orders 13059 (Aug. 19, 1997), 12959 (May 6, 1995) and 12957 (Mar. 15, 1995). Since 1997, each President has continued the national emergency with respect to Iran and those Executive Orders. The most recent continuation of this national emergency was on or about March 12, 2018 ("March 2018 Notice"). In the March 2018 Notice, the President stated that the "[a]ctions and policies of the Government of Iran, including its development of ballistic missiles, support for international terrorism, and human rights abuses continue to pose an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States." For that reason, "the national emergency declared on March 15, 1995, must continue in effect beyond March 15, 2018." 83 Fed. Reg. 11,393 (Mar. 14, 2018).

14. To respond to the national emergency with respect to Iran, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") issued the Iranian Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R. Part 560. Absent permission from OFAC in the form of a license, these regulations prohibited, among other things:

a. The exportation, reexportation, sale or supply, directly or indirectly, from the United States, or by a U.S. person, wherever located, of any goods, technology or services to Iran and the Government of Iran, including the exportation, reexportation, sale or supply of any goods, technology or services to a person in a third country undertaken with knowledge or reason to know that such goods, technology or

services were intended specifically for supply, transshipment or reexportation, directly or indirectly, to Iran or the Government of Iran (31 C.F.R. § 560.204);

b. The reexportation from a third country, directly or indirectly, by a person other than a U.S. person, of any goods, technology or services that have been exported from the United States, if: (a) such reexportation was undertaken with knowledge or reason to know that the reexportation is intended specifically for Iran or the Government of Iran, and (b) the exportation of such goods, technology or services was subject to export license application requirements under any United States regulations (31 C.F.R. § 560.205);

c. Any transaction by a U.S. person, wherever located, involving goods, technology or services for exportation, reexportation, sale or supply, directly or indirectly, to Iran or the Government of Iran (31 C.F.R. § 560.206); and

d. Any transaction that evaded or avoided, had the purpose of evading or avoiding, caused a violation of, or attempted to violate any of the prohibitions in the ITSR (31 C.F.R. § 560.203).

15. Furthermore, the ITSR's prohibitions on providing "services" to Iran or the Government of Iran included financial services, and applied to "[t]he transfer of funds, directly or indirectly, from the United States or by a U.S. person, wherever located, to Iran or the Government of Iran" and the "provision, directly or indirectly, to Iran or the Government of Iran of insurance services, investment or brokerage services (including but not limited to brokering or trading services regarding securities, debt, commodities, options, or foreign exchange), banking services, money remittance services; loans, guarantees, letters of credit, or other extensions of credit; or the service of selling or redeeming traveler's checks, money orders, and prepaid access products." 31 C.F.R. § 560.427.

IV. The Fraudulent Schemes

16. Even though the ITSR prohibited exportation of U.S.-origin goods, technology and services to Iran and the Government of Iran, HUAWEI operated SKYCOM as an unofficial subsidiary to obtain otherwise prohibited U.S.-origin goods, technology and services, including banking services, for HUAWEI's Iran-based business while concealing the link to HUAWEI. HUAWEI could thus attempt to claim ignorance with respect to any illegal act committed by SKYCOM on behalf of HUAWEI, including violations of the ITSR or other applicable U.S. law. In addition, SKYCOM, on behalf of HUAWEI, employed in Iran at least one U.S. citizen ("Employee 1"), an individual whose identity is known to the Grand Jury.

17. Since in or about November 2007, [redacted] HUAWEI, repeatedly misrepresented to the U.S. government and to victim financial institutions, including Financial Institutions 1, 2, 3 and 4, and their U.S. and Eurozone subsidiaries (the "Victim Institutions"), that, although HUAWEI conducted business in Iran, it did so in a manner that did not violate applicable U.S. law, including the ITSR. In truth, HUAWEI conducted its Iran business in a manner that did violate applicable U.S. law, including the ITSR. Had the Victim Institutions known about HUAWEI's repeated violations of the ITSR, they would have reassessed their banking relationships with HUAWEI, including the provision of U.S.-dollar and Euro clearing services to HUAWEI.

18. Additionally, [redacted] HUAWEI, repeatedly misrepresented to Financial Institution 1 that HUAWEI would not use Financial Institution 1 and its affiliates to process any transactions regarding HUAWEI's Iran-based business. In reality, HUAWEI used U.S. Subsidiary 1 and other financial institutions operating in the

United States to process U.S.-dollar clearing transactions involving millions of dollars in furtherance of HUAWEI's Iran-based business. Some of these transactions passed through the Eastern District of New York.

19. In or about late 2012 and early 2013, various news organizations, including Reuters, reported that SKYCOM had sold and attempted to sell embargoed U.S.-origin goods to Iran in violation of U.S. laws, and that HUAWEI in fact owned and operated SKYCOM. In December 2012, Reuters published an article purporting to contain a HUAWEI official statement addressing and denying those allegations. In January 2013, Reuters published a second article purporting to contain a HUAWEI official statement, again addressing and denying the Iran allegations. The purported statements by HUAWEI in these articles were relied on by the Victim Institutions in determining whether to continue their banking relationships with HUAWEI and its subsidiaries

20. Following publication of the December 2012 and January 2013 Reuters articles, various HUAWEI representatives and employees communicated to the Victim Institutions and to the public that the allegations regarding HUAWEI's ownership and control of SKYCOM were false and that, in fact, HUAWEI did comply with applicable U.S. laws, including the ITSR. Based in part on these false representations, the Victim Institutions continued their banking relationships with HUAWEI and its subsidiaries and affiliates.

21. For example, in or about June 2013, the defendant WANZHOU MENG requested an in-person meeting with a Financial Institution 1 executive (the "Financial Institution 1 Executive"), an individual whose identity is known to the Grand Jury. During the meeting, which took place on or about August 22, 2013, MENG spoke in Chinese,

relying in part on a PowerPoint presentation written in Chinese. Upon request by the Financial Institution 1 Executive, MENG arranged for an English-language version of the PowerPoint presentation to be delivered to Financial Institution 1 on or about September 3, 2013.

22. In relevant part, the PowerPoint presentation included numerous misrepresentations regarding HUAWEI's ownership and control of SKYCOM and HUAWEI's compliance with applicable U.S. laws, including that (1) HUAWEI "operates in Iran in strict compliance with applicable laws, regulations and sanctions of UN, US and EU"; (2) "HUAWEI's engagement with SKYCOM is normal business cooperation"; (3) the defendant WANZHOU MENG's participation on the board of directors of SKYCOM was to "help HUAWEI to better understand SKYCOM's financial results and business performance, and to strengthen and monitor SKYCOM's compliance"; and (4) "HUAWEI subsidiaries in sensitive countries will not open accounts at [Financial Institution 1], nor have business transactions with [Financial Institution 1]."

23. Based in part on these false representations made by the defendant WANZHOU MENG and others, Financial Institution 1 continued its banking relationship with HUAWEI and its subsidiaries and affiliates.

V. <u>The Scheme to Obstruct Justice</u>

24. In or about 2017, HUAWEI and HUAWEI USA became aware of the U.S. government's criminal investigation of HUAWEI. In response to the investigation, HUAWEI and HUAWEI USA made efforts to move any witnesses with knowledge about HUAWEI's Iran-based business to the PRC, and beyond the jurisdiction of the U.S.

government, and to destroy and conceal any evidence in the United States of HUAWEI's Iran-based business.

COUNT ONE
(Conspiracy to Defraud the United States)

25. The allegations contained in paragraphs one through 24 are realleged and incorporated as if set forth fully in this paragraph.

26. In or about and between November 2007 and the date of the filing of this Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI, [redacted] and SKYCOM, together with others, did knowingly and willfully conspire to defraud the United States by impairing, impeding, obstructing and defeating, through deceitful and dishonest means, the lawful governmental functions and operations of OFAC, an agency of the United States, in the enforcement of economic sanctions laws and regulations administered by that agency and the issuance by that agency of appropriate licenses relating to the provision of financial services.

27. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants HUAWEI, [redacted] and SKYCOM, together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

a. On or about September 13, 2012, a Senior Vice President of HUAWEI testified before U.S. Congress that HUAWEI's business in Iran had not "violated any laws and regulations including sanction-related requirements."

b. On or about September 17, 2012, the Treasurer of HUAWEI met with a principal of Financial Institution 4, an individual whose identity is known to the Grand Jury, in Manhattan, New York, and stated that HUAWEI and its global affiliates did not violate any applicable U.S. law.

c. On or about July 24, 2013, SKYCOM caused U.S. Subsidiary 1 to process a U.S.-dollar clearing transaction of $52,791.08.

d. On or about July 24, 2013, SKYCOM caused a bank located in the Eastern District of New York ("Bank 1"), an entity whose identity is known to the Grand Jury, to process a U.S.-dollar clearing transaction of $94,829.82.

e. On or about August 20, 2013, SKYCOM caused Bank 1 to process a U.S.-dollar clearing transaction of $14,835.22.

f. On or about August 28, 2013, SKYCOM caused Bank 1 to process a U.S.-dollar clearing transaction of $32,663.10.

g. On or about April 11, 2014, SKYCOM caused a bank located in the United States ("Bank 2"), an entity whose identity is known to the Grand Jury, to process a U.S.-dollar clearing transaction of $118,842.45.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT TWO
(Conspiracy to Commit Bank Fraud)

28. The allegations contained in paragraphs one through 24 are realleged and incorporated as if set forth fully in this paragraph.

29. In or about and between November 2007 and May 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI, [redacted] SKYCOM and WANZHOU MENG, also known as "Cathy Meng" and "Sabrina Meng," together with others, did knowingly and intentionally conspire to execute a scheme and artifice to defraud U.S. Subsidiary 1, a financial institution, and to obtain moneys, funds, credits and other property owned by and under the custody and control of said financial institution, by means of one or more materially false and fraudulent pretenses, representations and promises, contrary to Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT THREE
(Conspiracy to Commit Wire Fraud)

30. The allegations contained in paragraphs one through 24 are realleged and incorporated as if set forth fully in this paragraph.

31. In or about and between November 2007 and May 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI, [redacted] SKYCOM and WANZHOU MENG, also known as "Cathy Meng" and "Sabrina Meng," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Victim Institutions, and to obtain money and property from the Victim Institutions, by means of one or more

materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT FOUR
(Bank Fraud)

32. The allegations contained in paragraphs one through 24 are realleged and incorporated as if set forth fully in this paragraph.

33. In or about and between November 2007 and May 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI, [redacted] SKYCOM and WANZHOU MENG, also known as "Cathy Meng" and "Sabrina Meng," together with others, did knowingly and intentionally execute a scheme and artifice to defraud U.S. Subsidiary 1, a financial institution, and to obtain moneys, funds, credits and other property owned by, and under the custody and control of said financial institution, by means of one or more materially false and fraudulent pretenses, representations and promises.

(Title 18, United States Code, Sections 1344, 2 and 3551 et seq.)

COUNT FIVE
(Wire Fraud)

34. The allegations contained in paragraphs one through 24 are realleged and incorporated as if set forth fully in this paragraph.

35. In or about and between November 2007 and May 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants HUAWEI, [redacted] SKYCOM and WANZHOU MENG, also known as "Cathy Meng" and "Sabrina Meng," together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Victim Institutions by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: the defendants HUAWEI, [redacted] SKYCOM and MENG, together with others, (a) made, and caused to be made, a series of misrepresentations through email communications, written communications otherwise conveyed through the wires, and oral communications made with knowledge that the oral communications would be memorialized and subsequently transmitted through the wires, about, among other things, the relationship between HUAWEI and SKYCOM, HUAWEI's compliance with U.S. and U.N. laws, and the kinds of financial transactions in which HUAWEI engaged through the Victim Institutions; and (b) as a result of the misrepresentations, caused a series of wires to be sent by financial institutions from outside of the United States through the United States.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT SIX
(Conspiracy to Violate IEEPA)

36. The allegations contained in paragraphs one through 24 are realleged and incorporated as if set forth fully in this paragraph.

37. In or about and between November 2007 and November 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI, [redacted] and SKYCOM, together with

others, did knowingly and willfully conspire to cause the export, reexport, sale and supply, directly and indirectly, of goods, technology and services, to wit: banking and other financial services from the United States to Iran and the Government of Iran, without having first obtained the required OFAC license, contrary to Title 31, Code of Federal Regulations, Sections 560.203, 560.204 and 560.206.

(Title 50, United States Code, Sections 1705(a), 1705(c) and 1702; Title 18, United States Code, Sections 3551 et seq.)

COUNT SEVEN
(IEEPA Violations)

38. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

39. In or about and between November 2007 and November 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI, [redacted] and SKYCOM, together with others, did knowingly and willfully cause the export, reexport, sale and supply, directly and indirectly, of goods, technology and services, to wit: banking and other financial services from the United States to Iran and the Government of Iran, without having first obtained the required OFAC license, contrary to Title 31, Code of Federal Regulations, Sections 560.203, 560.204 and 560.206.

(Title 50, United States Code, Sections 1705(a), 1705(c) and 1702; Title 18, United States Code, Sections 2 and 3551 et seq.)

COUNT EIGHT
(Conspiracy to Violate IEEPA)

40. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

41. In or about and between 2008 and 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI, [redacted] and SKYCOM, together with others, did knowingly and willfully conspire to cause the export, reexport, sale and supply, directly and indirectly, of goods, technology and services, to wit: telecommunications services provided by Employee 1, a U.S. citizen, to Iran and the Government of Iran, without having first obtained the required OFAC license, contrary to Title 31, Code of Federal Regulations, Sections 560.203, 560.204 and 560.206.

(Title 50, United States Code, Sections 1705(a), 1705(c) and 1702; Title 18, United States Code, Sections 3551 et seq.)

COUNT NINE
(IEEPA Violation)

42. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

43. In or about and between 2008 and 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI, [redacted] and SKYCOM, together with others, did knowingly and willfully cause the export, reexport, sale and supply, directly and indirectly, of goods, technology and services, to wit: telecommunications services provided by Employee 1, a U.S. citizen, to Iran and the Government of Iran, without having first obtained the required

OFAC license, contrary to Title 31, Code of Federal Regulations, Sections 560.203, 560.204 and 560.206.

(Title 50, United States Code, Sections 1705(a), 1705(c) and 1702; Title 18, United States Code, Sections 2 and 3551 et seq.)

COUNT TEN
(Money Laundering Conspiracy)

44. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

45. In or about and between November 2007 and November 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI, [redacted] and SKYCOM, together with others, did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds, to wit: wire transfers, from one or more places in the United States to and through one or more places outside the United States and to one or more places in the United States from and through one or more places outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit: conspiracy to violate IEEPA, in violation of Title 50, United States Code, Section 1705, all contrary to Title 18, United States Code, Section 1956(a)(2)(A).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

COUNT ELEVEN
(Conspiracy to Obstruct Justice)

46. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

47. In or about and between January 2017 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI, [redacted] and HUAWEI USA, together with others, did knowingly, intentionally and corruptly conspire to obstruct, influence and impede an official proceeding, to wit: a Federal Grand Jury investigation in the Eastern District of New York, contrary to Title 18, United States Code, Section 1512(c)(2).

(Title 18, United States Code, Sections 1512(k) and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS TWO THROUGH FIVE

48. The United States hereby gives notice to the defendants charged in Counts Two through Five that, upon their conviction of such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), which requires any person convicted of such offenses to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

49. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2) and 982(b)(1); Title 21, United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS SIX THROUGH NINE AND ELEVEN

50. The United States hereby gives notice to the defendants charged in Counts Six through Nine and Eleven that, upon their conviction of such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

51. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT TEN

52. The United States hereby gives notice to the defendants charged in Count Ten that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

53. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1), to seek forfeiture of any

c

other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

[redacted]BILL

[redacted]

FOREPERSON

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

[redacted]
PURSUANT TO 28 C.F.R. 0.136

F. # 2017R05903
FORM DBD-34
JUN. 85

No.

**UNITED STATES DISTRICT COURT**

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

---

THE UNITED STATES OF AMERICA

*vs.*

HUAWEI TECHNOLOGIES CO., LTD., [redacted] HUAWEI DEVICE USA INC., SKYCOM TECH CO. LTD. and WANZHOU MENG, also known as "Cathy Meng" and "Sabrina Meng,"

Defendants.

---

**INDICTMENT**

(T. 18, U.S.C., §§ 371, 981(a)(1)(C); 982(a)(1), 982(a)(2), 982(b)(1)1343, 1344, 1349, 1512(k), 1956(h), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c); T. 50, U.S.C., §§ 1702, 1705(a) and 1705(c))

---

*A true bill.*

[redacted]

*Foreperson*

---

*Filed in open court this* __________ *day of* ____ *A.D. 20* ___

_______________________________________________

*Clerk*

---

*Bail, $* ___________ ______________________

---

***Alexander A. Solomon, David K. Kessler, Julia Nestor, and Kaitlin T. Farrell, Assistant U.S. Attorneys (718) 254-7000***